1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| IP SOLUTIONS, INC., | ) | Case No.: 1:21-cv-01391 JLT SKO |
| Plaintiff, | )<br>)<br>) | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| v. | )<br>) | |
| CENTRAL SIERRA HOLDINGS, INC., | )<br>) | (Doc. 15) |
| Defendant. | )<br>)<br>) | |

IP Solutions, Inc. seeks to hold Central Sierra Holdings, Inc. dba Mother Lode Products liable for breach of contract to negotiate in good faith the sale of MLP's business. (*See generally* Doc. 11.) MLP seeks dismissal of the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 15.) IPS opposes dismissal, asserting it states a valid and plausible claim on its face. (*See* Doc. 20.) The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, MLP's motion to dismiss is **DENIED**.

I.      **Background and Allegations**

IPS is an Ohio-based company in the business of acquiring and investing in companies across the country. (Doc. 11 at ¶ 1.) On June 22, 2021, IPS executed a Letter of Intent to acquire MLP, beekeeping equipment manufacturing company. (*Id*. at ¶ 7.)  The Letter contains various provisions, including terms of the proposed agreement including purchase price, owners' salaries, employment

agreements, and rent prices. (Doc. 18.)[1] Section 10 of the Letter sets forth the parties' understanding that certain provisions were binding obligations:

> **[E]xcept for Sections 5, 8 and 9 above,** this letter represents a **good faith** proposal by IPS and **does not constitute an offer or agreement**. MLP's **agreement** with this proposal indicates your **good faith intention** to proceed as indicated above. With the exception of the foregoing Sections 5, 8 and 9 above **which shall be binding**, the remainder of the letter **does not constitute a binding obligation** on the part of either MLP or IPS.

(Doc. 18 at 4 [emphasis added].) Section 5 states:

> MLP will provide IPS with a seventy-five (75) day exclusive review period for IPS to conduct due diligence and analysis on the business and operations of MLP. **During this due diligence period, you agree not to solicit or encourage in any manner any discussion with or furnish or cause to be furnished, any information to any person other than lPS or negotiate for or otherwise pursue the sale of stock or assets of MLP or any portion of the assets of MLP or any merger or other business combination of MLP with any other party.** IPS will hold all such information received from you in confidence and return it to you should the transactions contemplated herein not be closed.

(*Id.* at 3 [emphasis added].) Section 8 contains a confidentiality provision and Section 9 provides, in relevant part:

> JPS and MLP will be responsible for their own expenses in connection with all matters relating to this transaction. If, for any reason, this proposed transaction shall not be consummated, neither party will be responsible for any of the other parties' expenses.

(*Id.* at 3-4.)

According to IPS, in reliance on MLP's "obligation of good faith," it traveled to MLP's facility

---

[1] Based on the binding confidentiality clause, IPS indicated its intent to separately file a copy of the Letter once a request to file under seal was granted. (*See* Doc. 11 at ¶ 7.) Upon the Court granting this request, (Docs. 13, 17), the Letter was filed under seal on November 19, 2021. (Doc. 18.) While not attached to the complaint, the parties do not dispute the existence or authenticity of the Letter and IPS' claims are based solely upon the Letter's provisions. Accordingly, it is proper for the Court to consider the Letter at the motion to dismiss stage. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (holding that the incorporation-by-reference doctrine allows the Court to consider documents not attached to the complaint upon which the complaint "necessarily relies" if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.").

1    to review and analyze company information related to the proposed transaction, which required IPS to

2    expend significant time and resources. (Doc. 11 at ¶¶ 13-14.) IPS also invested time and resources into

3    drafting closing documents including the Asset Purchase Agreement, Non-Competition Agreements,

4    and many other closing documents. (*Id*. at ¶ 15.) During the due diligence period, MLP consistently

5    inquired IPS of its status, requested that IPS "move with alacrity," and provided necessary information

6    "to encourage IPS's continued due diligence" in "pursuit of an expedited transaction." (*Id*. at ¶ 16.)

7    IPS alleges that before the exclusive due diligence period expired, MLP "abruptly indicated its intent

8    to withdraw from the proposed transaction.) (*Id*. at ¶ 19.) MLP then represented it was "under

9    contract" with another purchaser "a few days" after terminating negotiations with IPS. (*Id*. at ¶ 21.)

10   Due to the proximity in time, IPS is informed and believes MLP entertained offers from other

11   perspective buyers in violation of the parties' exclusivity agreement and duty of good faith contained

12   within the Letter. (*Id*. at ¶ 20.)

13          Based upon these allegations, IPS asserts two claims against MLP: (1) breach of contract to

14   negotiate in good faith[2] and (2) breach of implied duty of good faith. (Doc. 11.)[3] MLP seeks dismissal

15   of the FAC in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 15.)

16   IPS filed an opposition on November 24, 2021 (Doc. 20), to which MLP replied on December 1, 2021.

17   (Doc. 21.)

18   **II.    Motion to Dismiss under Rule 12(b)(6)**

19          A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729,

20   732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks

21   a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

22   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is

23   limited to the complaint alone." *Cervantes v. Porterville of San Diego*, 5 F.3d 1273, 1274 (9th Cir.

24   1993).

25

26   ────────────────

27   [2] IPS titles its first cause of action "breach of the contractual duty of good faith." (Doc. 11.) Due to IPS'
     reliance on the seminal case, *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251 (2002), the Court
     construes this claim as a breach of contract to negotiate. (*See id*. at 1.)

28   [3] IPS filed a complaint on September 16, 2021 and First Amended Complaint on November 3, 2021. (Docs. 1,
     11.)

3

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.    Discussion and Analysis

IPS asserts that by executing the Letter of Intent, the parties entered into an enforceable agreement "to negotiate in good faith for the purchase of MLP by IPS," which MLP breached by violating the Letter's binding exclusivity provision under Section 5. (Doc. 11 at ¶¶ 7, 20.) MLP contends the Letter did not form a binding contract and even if it did, IPS fails to state a valid claim for breach of contract. (Doc. 15-1.)

### A.    Breach of contract to negotiate

Under California law, a contract to negotiate—distinct from an "agreement to agree"—may be an enforceable contract. *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251 (2002). Choosing a relatively unfamiliar path, plaintiff Copeland sought to enforce the parties' letter of intent as the contract in breach rather than the underlying substantive purchase agreement. *Id.* at 1256. The Second District Court of Appeal determined that while simply failing to agree could not give rise to liability as

4

an "agreement to agree," the failure to reach an agreement based on a party's breach of its obligation to negotiate or to negotiate in good faith could. *Id*. at 1257.[4] Additionally, the court distinguished a contract to negotiate from purported contracts other courts have dismissed as "agreements to agree," explaining that in those cases, the courts looked at the enforceability of the underlying contract as opposed to the enforceability of the contract to negotiate in its own right. *See id*. at 1257-58 (noting the distinctions in *Beck v. Am. Health Grp. Internat., Inc.*, 211 Cal. App. 3d 1555 (1989) and *Autry v. Republic Prods.*, 30 Cal. 2d 144 (1947)).

MLP takes the position that the Letter is merely an "agreement to agree," as opposed to a binding contract. In doing so, it neglects to acknowledge *Copeland*, let alone its effect on determining a preliminary agreement's enforceability under California law. MLP rests its argument on the very cases distinguished in *Copeland*, as well as three similar cases where the enforcement sought was that of the underlying contract, not on a contract to negotiate. (*See* Doc. 15-1 at 5-6, citing *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38 (1988); *First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058 (9th Cir. 2011); *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309 (9th Cir. 1996).) These cases are not instructive

---

[4] The court explained its position for recognizing such a cause of action:

> [W]e believe there are sound public policy reasons for protecting parties to a business negotiation from bad faith practices by their negotiating partners . . . As Professor Farnsworth observes, contracts today are not formed by discrete offers, counter-offers and acceptances. Instead they result from a gradual flow of information between the parties followed by a series of compromises and tentative agreements on major points which are finally refined into contract terms. These slow contracts are not only time-consuming but costly. For these reasons, the parties should have some assurance their investments in time and money and effort will not be wiped out by the other party's footdragging or change of heart or taking advantage of a vulnerable position created by the negotiation.

*Copeland*, 96 Cal. App. 4th at 1262 (internal citations and quotation marks omitted). The First Circuit echoed this sentiment:

> Modern transactions often involve significant up-front investments in deal structuring and due diligence, and parties may wish to protect those investments in some measure. Without any such protection, a rapacious counter-party may attempt to take advantage of the other party's sunk investment by trying to retool the deal at the last minute. To forestall such gamesmanship, parties may wish to build in safeguards that will operate early in the bargaining process. This can be accomplished by binding themselves sufficiently such that they feel comfortable investing resources into the deal, but without inextricably committing themselves to a transaction that is still inchoate. Contracts to negotiate can satisfy this need.

*Butler v. Balolia*, 736 F.3d 609, 615 (1st Cir. 2013) (internal citations omitted).

in this context. In likening the Letter to an "agreement to agree," MLP misreads IPS' claim. The parties were not obligated to consummate the final transaction, nor does IPS seek to enforce the Letter as such. It seeks to hold MLP liable for breaching the parties' contract to negotiate and doing so in bad faith. Thus, having recognized a letter of intent may give rise to cause of action for breach of contract to negotiate, and that the Letter here is not merely an agreement to agree, the inquiry of enforceability follows.

### 1.    The parties intended to be bound

To determine the enforceability of a contract the negotiate, the relevant inquiry rests upon whether the parties intended to be bound by the Letter's terms. *See A.R. Thomson Grp. v. Harbor Seal Inc.*, 2020 WL 6436967, at *4 (C.D. Cal. Sept. 23, 2020) ("A letter of intent *may* be a binding contract, '[r]egardless of the title, if the content shows that the parties intended to be bound, and the other requisites of a contract have been satisfied.'") (quoting *Rennick*, 77 F.3d at 315) (emphasis in original). To make this determination, the Court must first look to the language of the Letter itself. *See Am. Fed'n of Musicians of United States & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 977 (9th Cir. 2018) ("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent."); *see also Kelly v. Worth Holdings, LLC*, 2017 WL 4156186, at *4 (N.D. Cal. Sept. 18, 2017) ("Intent is to be inferred, if possible, solely from the written provisions of the contract."). If the language is clear and "does not lead to absurd results", the inquiry ends here. *Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 946 (S.D. Cal. 2021) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020)). If, on the other hand, the language creates an ambiguity, meaning it is "reasonably susceptible to more than one interpretation," the Court then must ask what the parties intended the language to mean. *Kelly*, 2017 WL 4156186, at *4.

Although MLP acknowledges the Letter's binding provisions, it argues that because the remainder of the Letter isn't binding, any binding provisions are negated, which indicates the parties' intent not to be contractually bound. (*See* Doc. 15-1 at 5-7.) This contention disregards the Letter's express language—which was drafted by MLP—that certain obligations would be binding on the parties. (*See* Doc. 18 at 4 ["With the exception of the foregoing Sections 5, 8 and 9 above which shall

be binding, the remainder of the letter does not constitute a binding obligation on the part of either

MLP or IPS."].) The Court need not look further to resolve this issue. The language is clear and

unambiguous that the parties intended to be bound by those provisions.[5]

MLP further contends that Section 10 of the Letter is the only one that mentions the term "good

faith" and that the parties "specifically agreed" that Section 10 was not binding upon them. (Doc. 15-1

at 9.) First, the term "good faith" need not be used to enforce the binding terms under IPS' theory. *See*

*Kelly*, 2017 WL 4156186, at *6 ("The Agreement need not specify a requirement to negotiate in good

faith because one is implied into every contract by California law.") (citing *Copeland*, 96 Cal. App. 4th

at 1259 n.18). More notable is MLP's attempt to use Section 10 as both a shield and a sword. It asserts

Section 10 is not binding when arguing that no good faith obligation was imposed, and in nearly the

same breath argues that *in Section 10*, the parties "expressly agreed" that the remainder of the Letter did

not constitute an offer, agreement, or binding obligation. (Doc. 15-1 at 8.)

The language is only reasonably susceptible to one interpretation without leading to absurd

results: the parties also intended for Section 10 itself to be binding. *Soil Retention*, 521 F. Supp. 3d at

946; *Kelly*, 2017 WL 4156186, at *4. To find otherwise would negate the relevance of outlining the

sections that would be binding in the first instance. Moreover, the parties both rely on the binding

nature of Section 10 in advancing their arguments, which further evinces their intent that the language

be binding. It is not for MLP to unilaterally decide when Section 10 is binding and when it is not. As

such, the Court finds the allegations sufficient to establish the existence of a contract.

---

[5] The Court also finds *A.R. Thomson Group v. Harbor Seal Inc.*, 2020 WL 6436967 (C.D. Cal. Sept. 23, 2020) to be illustrative. There, the parties executed a letter of intent to sell and purchase defendant Harbor Seal's business assets. The letter outlined the proposed acquisition and stated, *inter alia*, that the letter was "an expression of interest only and does not constitute a legally binding agreement between us, *except as provided in paragraph 21 below*." *Id*. at *1 (internal quotation marks omitted) (emphasis added). Paragraph 21 of the letter stated that paragraphs 17 through 22 were binding obligations on the parties, one of which provided for a 90-day exclusivity period proscribing Harbor Seal from entertaining or negotiating another purchase proposal. *Id*. at *1-2. Harbor Seal subsequently terminated negotiations and plaintiff A.R. sued. *A.R. Thomson*, 2020 WL 6436967, at *2-3. On Harbor Seal's motion to dismiss, the court interpreted the letter as a contract to negotiate in good faith. *Id*. at *5. Despite mostly nonbinding provisions, the court found that because the express language of paragraph 21 set forth binding provisions the parties intended the obligations set forth therein to be binding. *Id*. However, A.R. listed nine acts constituting breaches, none of which corresponded to a binding obligation as set forth in the letter. *Id*. Notably, in granting the motion, the court explained that A.R. was required to allege a breach as to one of the binding obligations contained in paragraphs 17-22. *Id*. As explained more below, while A.R. failed to allege a breach of a binding obligation, IPS did not.

2.       IPS states a claim for breach of contract

MLP alternatively argues that even if the Letter was binding on the parties, IPS fails to allege

facts sufficient to state a claim for breach of contract. (Doc. 15-1 at 7-8.) To state a claim for

breach of contract under California law, a plaintiff must sufficiently allege (1) the existence of a

contract, (2) performance or excuse for nonperformance by the plaintiff, (3) breach by the defendants,

and (4) resulting damages to the plaintiff. *Alcalde v. NAC Real Est. Invs. & Assignments, Inc.*, 316 F.

App'x 661, 662 (9th Cir. 2009) (citing *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745

(2001)); *see also Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1082 (C.D. Cal. 2017), *aff'd*, 747 F.

App'x 643 (9th Cir. 2019) (same).

First, MLP contends IPS fails to allege a contract existed which prevented it from withdrawing

from the transaction or bound it to negotiate in good faith. (Doc. 15-1 at 7-8.) As discussed above, IPS

plausibly alleges the existence of a contract. In addition to MLP not contesting the binding and

enforceable provisions of the Letter, the complaint sufficiently alleges—and the Letter makes clear—

that the parties were bound by specific provisions and agreed to proceed in good faith toward a final

agreement by accepting and signing the Letter. (*See* Doc. 11 at ¶¶ 7, 12; Doc. 18.) Thus, IPS

sufficiently pleads the existence of a contract.

Second, MLP conclusively asserts IPS fails to allege it performed its obligations under the

contract. (Doc. 15-1 at 8.) As IPS notes, the complaint made clear that in compliance with Section 8's

confidentiality clause, it did not attach a copy of the Letter, but instead filed it under seal upon entry of

a protective order. (Doc. 20 at 8 [citing Doc. 11 at ¶ 7].) It further points the Court to its allegations of

conducting, in good faith, extensive due diligence of MLP's business pursuant to Section 5. (*Id.*) At the

pleading stage, this is sufficient to sufficiently allege performance under the contract. *See AMG &*

*Assocs., LLC v. AmeriPride Servs., Inc.*, 2016 WL 9275402, at *5 (C.D. Cal. Aug. 29, 2016).

Third, MLP argues IPS does not sufficiently plead a breach of the Letter's exclusivity provision.

(Doc. 15-1 at 9.) It asserts that Section 5 proscribed it from soliciting, encouraging, negotiating, or

pursuing the sale of its assets during the exclusivity period, but that IPS merely alleges MLP

"entertain[ed] offers from other prospective purchasers," which does not constitute a breach. (*Id.*)

However, the complaint specifically alleges MLP breached Section 5 of the Letter by negotiating with

other prospective buyers. (*See* Doc. 11 at ¶ 21.) Thus, IPS sufficiently pleads that MLP breached the Letter. *AMG & Assocs.*, 2016 WL 9275402, at \*5.

Finally, MLP contends IPS fails to show it is entitled to damages because Section 9 of the Letter provides that the parties are responsible for their own expenses in connection with the transaction. (Doc. 15-1 at 8.) However, IPS correctly asserts that Section 9 does not preclude the recovery of all possible damages under the theory it proceeds under. (*See* Doc. 20 at 9.) *Copeland* made clear that recovery under a breach of contract to negotiate theory is limited to the damages incurred in relying on the defendant to negotiate in good faith, *which may or may not include* lost opportunity costs, but not expectation damages. 96 Cal. App. 4th at 1263 (emphasis added); *see also Kelly*, 2017 WL 4156186, at \*6 (explaining that under a failure to negotiate theory, recovery is limited to reliance damages, "such as out-of-pocket costs in conducting the negotiations and possibly lost opportunity costs") (internal quotation marks omitted). Although IPS may unsuccessfully seek unrecoverable expectation damages, (*see* Doc. 11 at ¶ 25 [indicating the profit margins of the other businesses IPS initially pursued]), it also alleges damages for its lost acquisition opportunities and the damages it incurred by conducting due diligence in reliance on MLP's good faith obligation, which exceeded $75,000. (*See id*. at ¶¶ 13-15, 25.) At this stage, this is sufficient. *AMG & Assocs.*, 2016 WL 9275402, at \*5; *see also Chodos v. W. Publ'g Co.*, 92 F. App'x 471, 474 n. 3 (9th Cir. 2004) ("Lost business opportunities are normally categorized as a form of reliance damages under California law.").[6] In sum, IPS pleads sufficient facts to state a plausible claim for breach of the parties' contract to negotiate. As to this claim, MLP's motion is **DENIED**.

### B.      Breach of the implied covenant of good faith

MLP contends IPS' second claim for breach of the implied duty of good faith fails as a matter of law for two reasons. First, MLP asserts that no enforceable contract exists to give rise to a duty of good faith. (Doc. 15-1 at 10-11.) As discussed above, IPS has sufficiently alleged the existence of a contract and as such, no further discussion is warranted. MLP next argues the implied duty of good

---

[6] Because the Court finds IPS sufficiently alleged recoverable damages, it is unnecessary at this point to address IPS' argument that MLP waived its ability to enforce Section 9's expense provision because of its breach. (*See* Doc. 20 at 9.)

faith claim should be dismissed as it is coextensive with IPS' breach of contract claim. (*Id.*)

MLP cites to *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990), and *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1086 (C.D. Cal. 2017), to support its position. (Doc. 15-1 at 10.) While in those cases the breach of implied duty claims were found to be "superfluous" as coextensive with the breach of contract claims, both courts made clear that dismissal was proper because the claims were duplicative of one another; that is, both relied upon essentially *the same allegations*. *See Careau*, 222 Cal. App. 3d at 1401; *Yi*, 258 F. Supp. 3d at 1086. On the other hand, in support of its implied duty claim, IPS alleges:

> In withdrawing from the transaction, MLP breached its implied duty of good faith. MLP's failure to negotiate in good faith the terms of a definitive agreement or indicate in any way prior to its withdrawal that it would not proceed with the transaction as outlined in the Agreement further evidences MLP's bad faith.

(Doc. 11 at ¶ 27.) IPS' allegations of breach based on MLP's bad faith withdrawal from the transaction are not "essentially the same" as its allegations of breach for violating the Letter's exclusivity provision, as set forth in IPS' breach of contract claim. Thus, as to this claim, MLP's motion to dismiss is **DENIED**.

## IV.     Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1.     Defendant's motion to dismiss (Doc. 15) is **DENIED**.

IT IS SO ORDERED.

Dated:   **May 3, 2023**

UNITED STATES DISTRICT JUDGE